**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| Continental Casualty Company and Valley Forge Insurance Company, | ) Civil Action No.: ) ) |
| Plaintiffs, | ) ) |
| vs. | ) **COMPLAINT FOR DECLARATORY** ) **JUDGMENT** |
| Key Constructors, Inc. and Richard N. Bennett, | ) ) ) |
| Defendants. | ) |

Plaintiffs Continental Casualty Company ("Continental Casualty") and Valley Forge Insurance Company ("Valley Forge") (collectively referred to as "Plaintiffs") state the following complaint against Defendants Key Constructors, Inc. ("Key") and Richard N. Bennett ("Bennett"):

**Nature Of The Case**

1.     This action seeks a declaration that Plaintiffs have no duty to defend Key against the suit filed by Bennett under three insurance policies and Plaintiffs have no duty to indemnify Key or Bennett for any judgment rendered in the suit brought by Bennett against Key under four insurance policies.

**The Parties**

2.     Continental Casualty is an insurance company organized and existing under the laws of Illinois with its principal place of business in Chicago, Illinois.

3.     Valley Forge is an insurance company organized and existing under the laws of Pennsylvania with its principal place of business in Chicago, Illinois.

4. Key is a corporation organized and existing under the laws of Virginia with its principal place of business in Clarksville, Virginia.

5. Bennett is an individual who is a resident of the State of South Carolina.

## Jurisdiction and Venue

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## Factual Background of The Underlying Suit

8. Upon information and belief, Key, among other entities, entered into contracts with Bennett relating to the construction of highway improvements in Clarendon, Williamsburg and Florence counties in the State of South Carolina.

9. It is alleged that Key contracted with the South Carolina Department of Transportation to construct a portion of the Highway 378 widening project.

10. Upon information and belief, as part of Key's work, Key entered into three contracts with Bennett in October of 2005. The first contract was to allow Key to create a borrow pit to extract dirt for use in the highway project. The second was to allow Key to place an office trailer on Bennett's land adjacent to the borrow pit. The third was to allow Key to create a disposal site on the western side of Bennett's property. Bennett and Key dispute the specific terms of the contracts and the obligations which may have been created by the contracts.

11. Upon information and belief, in October 2006, Bennett wrote to Key advising that it was in violation of the contract as Bennett had not been paid for the removed soil.

12. Bennett filed a complaint against Key on November 14, 2006, which is styled <u>Richard N. Bennett v. Key Constructors, Inc., et al</u>, Case No. 06-CP-45-413, pending in the Court of Common Pleas, County of Williamsburg, State of South Carolina ("Bennett Suit"). Bennett has amended his complaint several times. Under the current operative complaint, the Fourth Amended Complaint, Bennett asserts five theories of recovery against Key: breach of contract, breach of contract accompanied by fraudulent intent, civil conspiracy, trespass and nuisance.

13. The Breach of Contract claim in the Bennett Suit alleges, among other things, that Key failed to mine the borrow pit and remove the amount of material promised; failed to account for the amount of material removed; failed to pay for the borrow material removed; failed to create a lake in the area from which soils were excavated; failed to remove topsoil and clay from Bennett's cultivated field; failed to restore the farmland; failed to remove the debris pile from the disposal site; used the trailer site for unauthorized purposes leaving it in an unacceptable condition; and failed to leave the premises in condition satisfactory to Bennett.

14. The Breach of Contract Accompanied By Fraudulent Intent in the Bennett Suit alleges the breach of contract allegations against Key and also alleges certain fraudulent acts by Key. Those acts include misrepresenting to Bennett that Key would remove 120,000 cubic yards of dirt at a certain price; that Key would only store "green material" in the debris pile and it would be removed; that the trailer site would only be an "office trailer"; that Key would leave the premises in a satisfactory condition; that Key falsely appropriated Bennett's property without any intent to compensate Bennett; and that Key used the property for unauthorized and uncompensated purposes for bringing unauthorized materials onto the property in violation of the contracts and regulations of the State of South Carolina.

15. The Civil Conspiracy claim in the Bennett Suit alleges that Key conspired unlawfully to injure Bennett by the unauthorized use of Bennett's property by leaving unauthorized and illegal materials on the premises and that Bennett covered up those acts. Bennett alleges that Key's conduct was willful, wanton and reckless and that the conduct permanently damaged the real property, which may necessitate engineering and environmental fees to remediate.

16. The Trespass claim in the Bennett Suit alleges that Key entered the property without his consent and while on the property Key brought unauthorized and illegal materials on the premises in violation of the laws and regulations of the State.

17. The Nuisance claim in the Bennett Suit alleges that Key unreasonably interfered with Bennett's use and enjoyment of the land by bringing onto and leaving unauthorized materials on the premises in violation of the laws and regulations of the State. Bennett further alleges that Key's conduct was reckless, willful and wanton.

18. In his Fourth Amended Complaint against Key, Bennett asks for actual and punitive damages for all causes of action against Key except for the breach of contract claim.

**Insurance Policies**

19. The following insurance policies were issued to Key or under which Key is a named insured:

| Policy No. | Policy Periods | Issuing Entity |
|---|---|---|
| C 2075913310 | 3/11/04-3/11/05 | Continental Casualty |
| C 2075913310 | 3/11/05-3/11/06 | Continental Casualty |
| U 2075913310 | 3/11/06-3/11/07 | Valley Forge |
| U 2075913310 | 3/11/07-3/11/08 | Valley Forge |

20. Each of the four policies listed in Paragraph 19 contain Coverage A Bodily Injury and Property Damage Liability. The insuring agreement and relevant definitions state, in part:

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply. . .

   b. This insurance applies to . . . "property damage" only if:
      (1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
      (2) The . . . "property damage" occurs during the policy period; and
      (3) Prior to the policy period, no insured . . . knew that the . . . property damage" had occurred, in whole or in part. If such a listed insured . . . knew, prior to the policy period, that the. . . "property damage" occurred, then any continuation, change or resumption of such . . . "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. . . . "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured . . . includes any continuation, change or resumption of that . . . "property damage" after the end of the policy period.

   d. . . . "property damage" will be deemed to have been known to have occurred at the earliest time when any insured . . .:
      (1) Reports all, or any part, of the . . . "property damage" to us or any other insurer;
      (2) Receives a written or verbal demand or claim for damages because of the . . . "property damage"; or
      (3) Becomes aware by any other means that . . . "property damage" has occurred or has begun to occur.

          *               *               *

"Property damage" means:
   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it. . .

          *               *               *

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

5

21.     Coverage A Bodily Injury and Property Damage Liability in each of the policies contain the following relevant exclusions:

> 2. Exclusions
>     This insurance does not apply to:
> a. Expected Or Intended Injury
>     . . . "property damage" expected or intended from the standpoint of the insured. . . .
>         *               *               *
> f. Pollution
>     (1) . . . "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>
>     (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. . . .
>
>     (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;
>
>     (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or
>
>     (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. . ..
>
>     (2) Any loss, cost or expense arising out of any:
>
>     (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";
>     . . .
>     Paragraph (2) does not apply to liability for damages because of "property damage" that is not excluded by Paragraph (1) above.

6

> However, this exception to Paragraph (2) does not apply to any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement or claim or "suit" solely by or on behalf of a governmental authority.[1]
>
> \*     \*     \*
>
> j.  Damage To Property
>     "Property damage" to:
>     (1) Property you own, rent, or occupy. . . .
>     (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> \*     \*     \*
>
> "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

22.  Each of the four policies listed in Paragraph 19 provide Coverage B Personal and Advertising Injury Liability. The insuring agreement and relevant definitions state, in part:

> 1.  Insuring Agreement
>
>     a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .
>
>     b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.
>
> \*     \*     \*
>
> "Personal and advertising injury" means injury . . . arising out of one or more of the following offenses: . . .
>
>     c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

---

[1] This exclusion is slightly modified by endorsement in Valley Forge policy number U 2075913310 effective 3/11/06-3/11/07, as detailed in Paragraph 25 below.

7

23. Coverage B Personal and Advertising Injury Liability in each of the policies contain the following relevant exclusions:

> 2. Exclusions
>
>> This insurance does not apply to:
>>
>> a. Knowing Violation Of Rights Of Another
>> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".
>> \*     \*     \*
>> d. Criminal Acts
>> "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.
>> \*     \*     \*
>> f. Breach Of Contract
>> "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".
>> \*     \*     \*
>> m. Pollution
>> "Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
>> \*     \*     \*
>> n. Pollution-Related
>> Any loss, cost or expense arising out of any:
>>> (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or . . .

24. The Valley Forge policy number U 2075913310 effective 3/11/06-3/11/07 listed in Paragraph 19 provides Coverage D Limited Pollution Coverage - Work Sites. The insuring agreement and relevant definitions state, in part:

> This endorsement modifies several sections of the Commercial General Liability Coverage Part. These modifications apply only to the coverage provided by this endorsement.
>
>> 1. Exclusion f., Pollution, under Exclusions of Section I – Coverage A – Bodily Injury And Property Damage, is amended as follows:
>> . . .

8

  B. Paragraph (1)(d) is deleted and replaced by the following:

    (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations.

2. The following is added to COVERAGES (Section I):

COVERAGE D. LIMITED POLLUTION COVERAGE

 1. Insuring Agreement.

  a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" which directly results from a covered "pollution incident" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. . . .

  b. This insurance applies to . . . "property damage" only if the . . . "property damage" directly results from a "pollution incident"

   (1) which "commences during the policy period";
   (2) on or from a "work site" . . .; and
   (3) is accidental.

"Commences during the policy period" means that the first emission, discharge, release or escape of the "pollutant" or "pollutants" from which the . . . "property damage" arises is demonstrable as having occurred during this policy period.

  c. All . . . "property damage" resulting from one "pollution incident" shall be deemed to have occurred only at the commencement date of the covered "pollution incident."

    *    *    *

"Pollution incident" means the emission, discharge, release, or escape of "pollutants," provided that such emission, discharge, release, or escape results in the injurious presence of "pollutants" in or upon land, the atmosphere, interior of a building or any water course, body of water or ground water. A series of related emissions, discharges, releases or escapes of "pollutants" will be deemed to be one "pollution incident." "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis,

9

> chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
>
> \*          \*          \*
>
> "Work site" means any site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations, including sites temporarily borrowed or rented in support of a single worksite for storage of construction equipment. "Work site" does not include any premises, site or location which is or was at any time owned or occupied by or rented or loaned to any insured, except for the purpose of performing construction operations.

25. Coverage D Limited Pollution Coverage - Work Sites in the Valley Forge policy number U 2075913310 effective 3/11/06-3/11/07 contains the following relevant exclusions:

> 2. Exclusions.
>
> The insurance provided by this endorsement does not apply to:
>
> a.   . . . "property damage" expected or reasonably foreseeable from the standpoint of the insured.
>
> \*          \*          \*
>
> g.   . . . "property damage" arising out of a "pollution incident" at or from a "work site" which is a "waste facility."
>
> \*          \*          \*
>
> l.   . . . "property damage" arising out of a "pollution incident" which results from or is directly or indirectly attributable to failure to comply with any applicable statute, regulation, ordinance, directive or order relating to the protection of the environment and promulgated by any governmental body, provided that failure to comply is a willful or deliberate act or omission of:
>
>   (1) The insured. . .
>
> \*          \*          \*
>
> q.   Any multiple, punitive or exemplary damages or fines or penalties. . . . However, if a "suit" is brought against the insured with respect to a claim for acts or alleged acts falling within the coverage hereof, seeking both compensatory and punitive or exemplary damages, then we will afford a defense to such action, without liability for such punitive or exemplary damages.
>
> \*          \*          \*
>
> "Waste facility" means any site to which waste is delivered for storage, disposal, processing or treatment, whether or not such site is licensed by a governmental authority to perform such storage, disposal, processing or treatment.

26. In November, 2006, Key demanded that Valley Forge defend and indemnify it against the Bennett Suit.

27. In September, 2007, Valley Forge agreed to defend Key against the Bennett Suit under policy number U 2075913310 effective 3/11/06-3/11/07, under a full reservation of rights.

## Count I

### (Declaratory Judgment – Directed to Key - Duty To Defend Key Under Policies Effective 2004 to 2006 and 2007 to 2008)

28. Paragraphs 1-27 of the Complaint are incorporated by reference.

29. As the policyholder, Key has the burden of proving that Continental Casualty and Valley Forge have an obligation to defend it against the Bennett Suit under policy number C 2075913310 effective 3/11/04 to 3/11/05; policy number C 2075913310 effective 3/11/05 to 3/11/06; and policy number U 2075913310 effective 3/11/07 to 3/11/08.

30. Based on the information known to date, Key was placed on notice of Bennett's claim by October 2006.

31. Key provided notice to Valley Forge of Bennett's suit in November 2006.

32. Based on the information known to date, Key did not know of the property damage alleged by Bennett before October 2006, and therefore, Continental Casualty has no duty to defend Key against the Bennett Suit under Coverage A Bodily Injury and Property Damage Liability under policy number C 2075913310 effective 3/11/04 to 3/11/05 and policy number C 2075913310 effective 3/11/05 to 3/11/06.

33. Based on the information known to date, Key knew of the property damage alleged by Bennett in October 2006, and therefore, Valley Forge has no duty to defend Key against the Bennett Suit under Coverage A Bodily Injury and Property Damage Liability under policy number U 2075913310 effective 3/11/07 to 3/11/08.

34. Continental Casualty and Valley Forge have no duty to defend Key against the Bennett Suit under Coverage A Bodily Injury and Property Damage Liability for the following reasons:

   (a) damages alleged by Bennett do not constitute "property damage" as that term is defined in the policies;

   (b) intentional conduct by Key is not an "occurrence" under the policies;

   (c) property damage alleged that is expected or intended by Key is not covered;

   (d) property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" is not covered;

   (e) property damage arising out of property occupied or leased by Key is not covered; and

   (f) other terms, conditions and exclusions not specifically stated herein contained in or applicable to Coverage A Bodily Injury and Property Damage Liability may also bar coverage.

35. Continental Casualty and Valley Forge have no duty to defend Key against the Bennett Suit under Coverage B Personal and Advertising Injury Liability for the following reasons:

   (a) injury caused by or at the direction of Key with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury" is not covered;

(b)  injury arising out of criminal acts committed by or at the direction of Key is not covered;

(c)  injury arising out of breach of contract alleged by Bennett is not covered;

(d)  injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time is not covered;

(e)  any loss, cost or expense arising out of any request, demand or order that Key test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants" is not covered; and

(f)  other terms, conditions and exclusions not specifically stated herein contained in or applicable to Coverage B Personal and Advertising Injury Liability may also bar coverage.

36.  Based on the foregoing, Continental Casualty and Valley Forge have no obligation to defend Key against the Bennett Suit under policy number C 2075913310 effective 3/11/04 to 3/11/05; policy number C 2075913310 effective 3/11/05 to 3/11/06; and policy number U 2075913310 effective 3/11/07 to 3/11/08.

37.  There exists a real and present controversy between Continental Casualty, Valley Forge and Key regarding their respective rights and obligations under the contracts listed in Paragraph 19 of this Complaint with respect to the Bennett Suit filed against Key.

### Count II
### (Declaratory Judgment – Directed to Key and Bennett
### - Duty to Indemnify as to All Policies)

38.  Paragraphs 1-27 of the Complaint are incorporated by reference.

39. Key and/or Bennett have the burden of proving that Continental Casualty and Valley Forge have an obligation to indemnify Key and/or Bennett for damages that may be awarded against Key in the Bennett Suit under policies listed in Paragraph 19.

40. Based on the information known to date, Key was placed on notice of Bennett's claim alleged by October 2006.

41. Based on the information known to date, Key provided notice to Valley Forge of Bennett's suit in November 2006.

42. Based on the information known to date, Key did not know of the property damage alleged by Bennett before October 2006, and therefore, Continental Casualty has no duty to indemnify Key and/or Bennett for damages that may be awarded against Key in the Bennett Suit under Coverage A Bodily Injury and Property Damage Liability under policy number C 2075913310 effective 3/11/04 to 3/11/05 and policy number C 2075913310 effective 3/11/05 to 3/11/06.

43. Based on the information known to date, Key knew of the property damage alleged by Bennett in October 2006, and therefore, Valley Forge has no duty to indemnify Key and/or Bennett for damages that may be awarded against Key in the Bennett Suit under Coverage A Bodily Injury and Property Damage Liability under policy number U 2075913310 effective 3/11/07 to 3/11/08.

44. Continental Casualty and Valley Forge have no duty to indemnify Key or Bennett for damages that may be awarded against Key in the Bennett Suit under Coverage A Bodily Injury and Property Damage Liability for the following reasons:

(a) Damages incurred by Bennett including, but not limited to, economic damages, do not constitute "property damage" as that term is defined in the policies;

(b) Intentional conduct by Key including, but not limited to, breach of contract, breach of contract accompanied by fraudulent intent, civil conspiracy trespass and nuisance, is not an accident and therefore is not an "occurrence" under the policies;

(c) Property Damage that is expected or intended by Key including, but not limited to, damages resulting from the disposal site on the property and the intentional releases of unauthorized materials, is not covered;

(d) Property Damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" is not covered including, but not limited to, the disposal area and releases of unauthorized and illegal materials brought on the property;

(e) Property Damage arising out of property occupied or leased by Key is not covered; and

(f) Other terms, conditions and exclusions not specifically stated herein contained in or applicable to Coverage A Bodily Injury and Property Damage Liability may also bar coverage.

45. Continental Casualty and Valley Forge have no duty to indemnify Key or Bennett for damages that may be awarded against Key in the Bennett Suit under Coverage B Personal and Advertising Injury Liability for the following reasons:

(a) Injury caused by or at the direction of Key with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury," as that term is defined under the policies, is not covered, including, but not limited to, damages awarded in connection with Bennett's trespass claim;

(b) Injury arising out of criminal acts committed by or at the direction of Key is not covered, including, but not limited, damages resulting from Key's violation of the laws and regulation of the State of South Carolina;

(c) Injury arising out of breach of contract alleged by Bennett is not covered;

(d) Injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time is not covered;

(e) Any loss, cost or expense arising out of any request, demand or order that Key test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants" is not covered; and

(f) Other terms, conditions and exclusions not specifically stated herein contained in or applicable to Coverage B Personal and Advertising Injury Liability may also bar coverage.

46. Valley Forge has no duty to indemnify Key or Bennett for damages that may be awarded against Key in the Bennett Suit under Coverage D Limited Pollution Coverage - Work Sites for the following reasons:

(a) Damages incurred by Bennett including, but not limited to, economic damages, do not constitute "property damage" as that term is defined in the policies;

(b) the alleged "property damage" was not a direct result of a "pollution incident";

(c) the alleged "property damage" from a "pollution incident" did not commence during the policy period;

(d) the alleged "property damage" from a "pollution incident" was not accidental;

(e) the alleged "property damage" was expected or reasonably foreseeable by Key;

(f) the alleged "property damage" arising out of a "pollution incident" was from a "work site" which is a "waste facility," including, but not limited to, damage resulting from the disposal area of Bennett's property;

(g) the alleged "property damage" arising out of a "pollution incident" resulted from or is directly or indirectly attributable to Key's willful or deliberate act or omission to comply with applicable statutes, regulations, ordinances, directives or orders relating to the protection of the environment and promulgated by any governmental body;

(h) Punitive, exemplary damages, fines, or penalties are not covered;

(i) Other terms, conditions and exclusions not specifically stated herein contained in or applicable to Coverage D Limited Pollution Coverage may also bar coverage.

47. Based on the foregoing, Continental Casualty and Valley Forge have no obligation to defend Key against the Bennett Suit under policy number C 2075913310 effective 3/11/04 to 3/11/05; policy number C 2075913310 effective 3/11/05 to 3/11/06; policy number U 2075913310 effective 3/11/06 to 3/11/07; and policy number U 2075913310 effective 3/11/07 to 3/11/08.

48. There exists a real and present controversy between Continental Casualty, Valley Forge and Key regarding their respective rights and obligations under the contracts listed in Paragraph 19 of this Complaint with respect to the Bennett Suit filed against Key.

## Prayer For Relief

WHEREFORE, Continental Casualty and Valley Forge pray this Court to enter a judgment providing the following:

1. A declaration that Continental Casualty and Valley Forge have no duty to defend Key against the Bennett Suit under policy number C 2075913310 effective 3/11/04 to 3/11/05; policy number C 2075913310 effective 3/11/05 to 3/11/06; and policy number U 2075913310 effective 3/11/07 to 3/11/08.

2. A declaration that Continental Casualty and Valley Forge have no duty to indemnify Key and Bennett against the Bennett Suit under policy number C 2075913310 effective 3/11/04 to 3/11/05; policy number C 2075913310 effective 3/11/05 to 3/11/06; policy number U 2075913310 effective 3/11/06 to 3/11/07; and policy number U 2075913310 effective 3/11/07 to 3/11/08.

3. An award of all costs incurred herein, including but not limited to attorneys' fees; and

4.        Such other and further relief as this Court may deem just and proper.


Dated:  June 2, 2011

                              Respectfully submitted,


                              S/Phillip E. Reeves
                              Phillip E. Reeves (Fed. Bar # 3232)
                              Jennifer D. Eubanks (Fed. Bar #6137)
                              Gallivan, White & Boyd, P.A.
                              Post Office Box 10589, F.S.
                              Greenville, South Carolina  29603
                              (864)271-5377

                              **ATTORNEYS FOR CONTINENTAL CASUALTY COMPANY AND VALLEY FORGE INSURANCE COMPANY**